### UNITED STATES

#### v.

### Lee R. PUCKETT, Boatswain's Mate Third Class, U.S. Coast Guard.

#### CGCM 0030.
#### Docket No. 943.

U.S. Coast Guard Court of
Military Review.

23 April 1991.

---

* Judges Bridgman and Bastek recused themselves at the outset and did not participate in the action on this petition.

Trial Counsel: LCDR Lawrence Kiern, USCG.

Detailed Defense Counsel (Article 32 Investigation and Trial 12 June 1989): LT Carl Piper, JAGC, USNR.

Individual Military Counsel (24, 25 & 28 July 1989): LT Douglas W. Rose, JAGC, USNR.

Substitute Detailed Defense Counsel (Post Trial Representation): CAPT J.L. Whitmer, USMC.

Appellate Defense Counsel: CDR Terrance M. Edwards, USCG.

Appellate Government Counsel: CDR Richard T. Buckingham, USCG.

Before Panel One BAUM, BRIDGMAN and SHKOR, Appellate Military Judges.

BAUM, Chief Judge:

At a trial held on 12 June 1989 and 24, 25 and 28 July 1989, appellant pled not guilty to numerous drug related offenses before a general court-martial composed of officer and enlisted members. Despite his pleas, the Court convicted appellant of eleven specifications of wrongful use of marijuana under Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a and four specifications of failure to obey a lawful general regulation in wrongfully not

reporting unauthorized drug use by Coast Guard personnel in violation of Article 92, UCMJ, 10 U.S.C. § 892. The Court acquitted appellant of two out of three specifications alleging solicitation of Coast Guard members to use marijuana in violation of Article 134, UCMJ, 10 U.S.C. § 934. The third specification was withdrawn before findings. Also, appellant was found not guilty of one specification of LSD use and not guilty of three specifications of marijuana use in violation of Article 112a, UCMJ. One specification of marijuana use was withdrawn before findings. Appellant was sentenced to a bad conduct discharge, confinement for one year, reduction to E-2, and forfeiture of all pay and allowances, except $100.00 per month for the length of confinement. The convening authority disapproved the findings of guilty for the four specifications of failure to obey a lawful general regulation under Article 92, UCMJ and dismissed those four offenses. The convening authority then reduced the forfeitures to $683.60 per month for one year and approved the remainder of the adjudged sentence. Before this Court, appellant has assigned the following errors, which have been orally argued:

I

APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AMENDMENT TO THE U.S. CONSTITUTION AND ARTICLE 27, UCMJ, 10 U.S.C. § 827

II

THE MILITARY JUDGE COMMITTED PREJUDICIAL ERROR BY ALLOWING A GOVERNMENT WITNESS TO TESTIFY AS TO THE REHABILITATIVE POTENTIAL OF APPELLANT BASED SOLELY UPON THE NATURE OF APPELLANT'S OFFENSES AND AS PART OF THE GOVERNMENT'S CASE IN AGGRAVATION PURSUANT TO R.C.M. 1001(b)(5)

III

THE CONVENING AUTHORITY, IN TAKING HIS ACTION, ILLEGALLY IN-

CREASED APPELLANT'S ADJUDGED PUNISHMENT

IV

THE MEMBERS OF APPELLANT'S COURT-MARTIAL PANEL MAY HAVE OVERHEARD WITNESSES IN THE CASE AGAINST HIM DISCUSSING THEIR TESTIMONY IN OUT-OF-COURT SITUATIONS THEREBY IMPERMISSIBLY TAINTING THE FINDINGS

I

*Effective Assistance of Counsel*

■ In assignment one, appellant asserts that he was denied the effective assistance of counsel at trial. In making this assertion, appellant cites *U.S. v. Scott,* 24 M.J. 186 (C.M.A.1987) for the established principle that both the Sixth Amendment to the U.S. Constitution and Article 27, UCMJ, 10 U.S.C. § 827, guarantee military accused the right to effective counsel assistance. He also cites *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) for the appropriate standard in reviewing claims of ineffective assistance:

> "First the defendant must show that Counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that deficient performance prejudiced the defense. This requires showing that counsel errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."

Id. 466 U.S. at 686, 104 S.Ct. at 2064

Appellant, thereafter, sets out numerous instances of asserted omissions and mistakes by his individual military counsel, which in the view of appellant, were so serious that they deprived him of a fair trial.

In response, government counsel acknowledges the applicability to military personnel of the Constitutional right to ef-

fective assistance of counsel and agrees that the appropriate standard for measuring such effectiveness is set forth in *Strickland v. Washington, supra.* He goes on, however, to cite *Strickland* for the additional proposition that in evaluating counsel's performance there is a strong presumption of adequate representation which appellant has the burden of proof in overcoming. Id. 466 U.S. at 690, 104 S.Ct. at 2066. Furthermore, the government argues that, even if appellant satisfies that burden, *Strickland* also requires appellant to show prejudice to the defense from the asserted performance deficiencies and that the test for determining such prejudice is whether there is a reasonable probability that, absent the errors, the result would have been different. The Government contends that in both respects appellant has failed to make his case.

Instead of counsel incompetence and prejudice, the government asserts that the record reflects a sound trial strategy, mutually agreed upon by counsel and client, and adhered to in a competent manner by defense counsel to appellant's benefit. In this regard, we find the views expressed by the U.S. Court of Appeals in *U.S. v. Weaver*, 882 F.2d 1128 (7th Cir.1989) cert. denied — U.S. ——, 110 S.Ct. 415, 107 L.Ed.2d 380 (1989) particularly pertinent:

> Where a defendant, fully informed of the reasonable options before him, agrees to follow a particular strategy at trial, that strategy cannot later form the basis of a claim of ineffective assistance of counsel. *U.S. v. Williams*, 631 F.2d 198, 204 (3d Cir.1980) (no ineffective assistance of counsel where defendant ultimately concurred in his trial counsel's tactical decision.) To allow that would be to exempt defendants from the consequences of their actions at trial and would debase the right to effective assistance of counsel enshrined in the sixth amendment.

Id. at 1140.

Trial defense counsel has outlined his strategy clearly in an affidavit submitted by the Government in response to appellant's assertions of ineffectiveness. In essence, the defense deliberately chose to allow the government to "ramble on" to induce the members to conclude that the government was over-reaching and over-charging and that the accused was the "scapegoat" in a situation where almost everyone at the unit was using drugs.

Pursuing that plan of action, Individual Military Counsel made it a point not to constantly interrupt the proceedings with unnecessary objections. This strategy apparently offended a civilian attorney who was observing appellant's trial as counsel for a prosecution witness also facing court-martial. While another prosecution witness was testifying, this attorney tapped the Individual Military Counsel on the shoulder and urged him to make objections and later offered him additional unsolicited advice. Not content with attempting to assert himself in the defense of the accused, the attorney complained to the convening authority's legal officer about counsel's competency and incorporated his assertions in an affidavit. This affidavit appears to be the underlying basis for the counsel-ineffectiveness assignment of error before this Court, augmented by a number of failures to object gleaned from the record by appellate defense counsel.

Despite the assertions of the other attorney, defense counsel's trial strategy appears to have paid off handsomely. Appellant was acquitted by the Court of six alleged offenses. Two more specifications were withdrawn before findings and the convening authority dismissed four specifications after disapproving the findings of guilty. The Court was instructed that it could award a maximum sentence of a dishonorable discharge, confinement for 30 years, forfeiture of all pay and allowances, and reduction to the lowest pay grade, E–1, but it was persuaded, instead, to impose the much lighter sentence of a bad conduct discharge, confinement for one year, forfeiture of all pay and allowances, except $100.00 per month for the length of confinement, and reduction to E–2. That sentence was, in turn, further reduced by the convening authority with respect to the forfeiture portion.

As pointed by the Government, *Strickland v. Washington, supra,* requires appellant to show that there is a reasonable probability the result in his case would have been different if the purported omissions and mistakes on counsel's part had not occurred. Such a showing has not been made. Again, quoting from *U.S. v. Weaver, supra:*

It is not necessary to determine in every case whether counsel's conduct was deficient, if the result would have been the same regardless of counsel's conduct, then there has been no denial of the sixth amendment right to effective assistance of counsel.

Id. 882 F.2d at 1136.

Applying this standard, we find there was no prejudice to appellant, even if we were to assume counsel's performance was deficient, which, in our view, it was not. Counsel's affidavit answers to our satisfaction the allegations against him. In our eyes, defense counsel's failure to object to every jot and title of hearsay or other evidence rule violation made sense as part of his overall strategy. Moreover, assertions to the contrary, notwithstanding, he appears to have been prepared for a difficult trial, made all the more difficult by the interference and distraction of a lawyer who in the words of trial defense counsel: "was the attorney for an individual who from all appearances was cooperating with the prosecution and was prepared to testify against my client. It struck me that there was a potential conflict of interest in his supposed altruist concern for BM3 Puckett." P. 2 Affidavit of 18 June 1990 from Douglas W. Rose. Suffice it to say, we find absolutely no merit to the assignment of error.

## II

### Prejudicial Error From Testimony of Lack of Rehabilitation Potential

In assignment of error two, appellant, citing *U.S. v. Horner,* 22 M.J. 294 (C.M.A.1986); *U.S. v. Ohrt,* 28 M.J. 301 (C.M.A.1989); *U.S. v. Gunter,* 29 M.J. 140 (C.M.A.1989); and *U.S. v. Claxton,* 29 M.J. 667 (C.G.C.M.R.1989), *aff'd on reconsideration,* 29 M.J. 1032 (C.G.C.M.R.1990), *aff'd* 32 M.J. 159 (C.M.A.1991), asserts that the military judge committed prejudicial error by allowing a government witness testifying in aggravation pursuant to RCM 1001(b)(5) to express an opinion as to appellant's rehabilitative potential based solely upon the nature of the offenses. In response, the Government argues: 1) that such testimony from members of the accused's command who are not the commanding officer is not prohibited under any of the cited cases; 2) that such testimony by other witnesses is merely limited to having a proper foundation, which this witness had; 3) that this witness was the appellant's executive petty officer, a position not to be equated with commanding officer and, thus, not subject to concerns of possible improper command influence on the court; 4) that appellant's failure to object waived any error; and 5) this would not be an appropriate instance for invoking the plain error doctrine based on M.R.E. 103(d) since there was no substantial prejudice to the accused.

The complained of testimony was from the former executive petty officer of appellant's command, a chief petty officer, who was called as a witness in aggravation by the Government. At the end of the Chief's direct testimony, he was asked to express his opinion concerning appellant's potential for rehabilitation. Prior to that, his testimony reflected the requisite knowledge and dealings with the accused which would support a response to the trial counsel. Accordingly, the requested opinion concerning rehabilitative potential could have conformed to the foundation requirements expressed in *U.S. v. Ohrt, supra,* and *U.S. v. Horner, supra.* Instead of basing his opinion on such a foundation, however, the Chief's answer related it entirely to the offenses committed.

We view the Chief's testimony concerning rehabilitative potential as falling squarely within the strictures of *U.S. v. Ohrt, supra,* as amplified by subsequent opinions. See *U.S. v. Wilson,* 31 M.J. 91 (C.M.A.1990) (testimony of accused's first sergeant); *U.S. v. Corraine,* 31 M.J. 102

(C.M.A.1990) (testimony of accused's first sergeant). While the Chief was not the accused's commanding officer, he was second in command of appellant's unit. Accordingly, we consider the precepts of *Ohrt* and *Horner* are as applicable to him as they were to the first sergeants in *U.S. v. Wilson, supra,* and *U.S. v. Corraine, supra.* For this reason, the Government's first and third arguments with respect to this assignment are rejected. The Government's second argument is deemed to be without merit because the Chief failed to base his opinion on his knowledge of appellant's performance and character, resting it, instead, on the offenses alone. The last two arguments are also rejected because we believe the challenged testimony constituted plain error, making the waiver doctrine inapplicable. As a separate basis for our position on this issue we turn to the expression of this Court's broad power in *U.S. v. Claxton,* 32 M.J. 159 (C.M.A.1991) to "do justice" without a finding of "plain error" when there is error to which the trial defense counsel did not object.

For all of these reasons, we deem the testimony from the command's former executive petty officer that appellant does not have rehabilitative potential because, "He broke the law," to be prejudicial error that requires corrective action. Such action can take the form of either a rehearing on the sentence or reassessment of that sentence by this Court under the terms of *U.S. v. Sales,* 22 M.J. 305, 308 (C.M.A.1986).

█ When we say we have found prejudicial error, that is simply a shorthand way of our conveying what Article 59(a), UCMJ, 10 U.S.C. § 859(a) states, that there is error which "materially prejudices the substantial *rights* of the accused." (Emphasis added). See also Military Rule of Evidence (MRE) 103(d). We do not mean necessarily that we have concluded the error adversely impacted upon the sentence, resulting in a more severe punishment than the accused would have received had the error not been committed. That question is properly left to the reassessment process.

█ If, at that stage, we determine the sentence was adversely affected, we must reduce it to a level we are convinced would have been forthcoming had the error prejudicial to the accused's *rights* not been committed or, if unable to do this, return the record for a sentence rehearing. If we are convinced the error, while prejudicing the accused's rights, had no adverse impact on the adjudged sentence, we can affirm the sentence before us notwithstanding the earlier determination of error prejudicial to the accused's rights.

We have digressed to explain this basic matter because we believe confusion has developed over the years from the shorthand use of the term "prejudicial error." As a result, there appear to be many who believe the term has a meaning different from that expressed in Article 59, UCMJ. Rather than relating simply to an accused's rights, "prejudicial error" now seems to be taken to mean that the findings or sentence have been adversely affected. Given that view, when prejudicial error is found, a rehearing or modification of findings or sentence would necessarily have to follow to purge the prejudice. Our understanding of the law conflicts with that view. We believe, instead, that there is a multi-step process to be taken when addressing this subject that permits a court to affirm the findings and sentence despite a finding of prejudicial error.

█ First, there must be a determination that a substantial right has been materially prejudiced by the error committed. Once a right violation is found, the next consideration is whether that "prejudicial error" could have affected the findings or sentence. If it is determined that the error could have impacted the findings or sentence, it must then be decided whether the impact can be negated by action at the appellate level. In determining at which forum correction may be made, trial or appellate, the impact of the error upon the findings or resultant sentence must be determined. If the limits of impact cannot be discerned, then the record must be returned for a new hearing at the trial level unaffected by the debilitating error. If the limits of the impact of the error on findings or sentence can be ascertained, action to

nullify the error may be undertaken by the appellate court. If, as in this case, the error could have affected the sentence, then it should be reduced to a level at which the Court is convinced was the minimum that would have been adjudged had the error not occurred. If the sentence is deemed to have been unaffected by the error, it may be affirmed, in our view, upon such reassessment, despite the earlier finding of prejudicial error.

This detailed explication should serve to explain our rationale when affirming a sentence upon reassessment, after a finding of "prejudicial error." See *U.S. v. Turcola,* No. 930 unpub. op. (CGCMR Dec. 21, 1989); *rev'd as to sentence,* Cox, J. dissenting, 31 M.J. 445 (C.M.A. Summary Disposition July 3, 1990); (sentence reassessed and reaffirmed), unpub. op. (CGCMR August 23, 1990); review granted on specified issue whether CGCMR properly interpreted CMA precedent when it concluded that prejudicial error occurred but that such error did not require a reduction in sentence. 32 M.J. 304 (CMA Journal Proceedings 1991).

We have found error which materially prejudiced a substantial right of the accused at the sentencing phase of trial and we have concluded that reassessment by this Court will suffice to purge the error.

### III

#### *Improper Increase of Sentence By The Convening Authority*

In his third assignment of error, appellant submits that the convening authority illegally increased the forfeiture portion of the sentence by approving forfeitures for one year when the court had imposed a loss of pay for the "length of confinement." He argues that, although one year's confinement was adjudged by the court, appellant is entitled to "good time" as well as possible early release from confinement for other reasons. As a result, he contends that the convening authority lengthened the period for which pay will be forfeited by approving the fixed period of one year. Appellant also notes that forfeitures should have been stated in whole dollars by the

convening authority rather than in the amount of $683.60.

The Government concedes on both points and suggests that this Court affirm forfeitures of only $683.00 pay per month for nine months, since it is the Government's understanding that appellant was released from confinement after serving nine months and nineteen days. The concession and suggested action is well taken and is considered the maximum forfeiture that could be approved by the Convening Authority.

### IV

#### *Purported Possible Taint of Court Members*

■ In his last asserted error, filed as a supplemental assignment, appellant submits that either the findings should be disapproved or a hearing ordered pursuant to *U.S. v. Dubay,* 17 U.S.C.M.A. 147, 37 CMR 411 (1967), because of a statement made by the trial counsel to the judge in a subsequently tried companion case. In that case, trial counsel asked the judge to instruct the members to disregard anything they hear outside the courtroom because, *"we have run into a problem in the past with so many witnesses about on various floors and so forth, that it's important to keep the members relying upon what they hear in the courtroom."* ADC Supplemental brief p. 3. Since that statement was made in a trial on similar charges at the same location three weeks after appellant's court-martial, appellant submits that there is more than a mere possibility that the "problem" alluded to by trial counsel arose during appellant's trial.

In response, the Government has filed an affidavit from trial counsel in which he explains that he was not referring to appellant's court-martial when he noted a "problem in the past," but was referring, instead, to an entirely unrelated earlier trial in which the defense had expressed concern about the possibility of overheard conversations. Trial counsel expressly stated that he was not aware of any such problem during appellant's court-martial. Based on

this unrebutted response from the trial counsel, appellant's supplemental assignment of error is rejected.

## V

### Conclusions

In summary, we have rejected two of the four errors assigned, and found merit with respect to the other two relating to sentence, which we will reassess. Upon such reassessment, we have determined that the prejudicial error involving the improperly expressed rehabilitative-potential opinion had no impact whatsoever upon the resultant sentence. In reaching this conclusion, we have assured ourselves that the sentence adjudged was no greater than that which would have been imposed had the prejudicial error not been committed. *U.S. v. Sales*, 22 M.J. 305 (C.M.A.1986). Accordingly, that sentence could be affirmed despite our finding prejudicial error. The adjudged sentence, however, was modified in an improper manner by the convening authority, requiring our correction. Reduction of the forfeitures to $683.00 pay per month for nine months will accomplish that objective and we will take that step.

In meeting our responsibilities under Article 66, UCMJ, 10 U.S.C. § 866, we deem the sentence approved by the convening authority, as further reduced by us to include only forfeitures of $683.00 pay per month for nine months, to be correct in law and fact and should be approved. Accordingly, the findings and only so much of the sentence approved below as provides for a bad conduct discharge, confinement for one year, reduction to E-2, and forfeitures of $683.00 pay per month for nine months are affirmed.

Judges BRIDGMAN and SHKOR concur.